The Honorable William G. Mason State Representative, 75th District (Retired) 1661 Arizona El Dorado, Kansas 67042
Dear Representative Mason:
While serving as State Representative for the 75th District, you requested our opinion regarding whether a wine-judging competition held last September at the Kansas State Fair was conducted legally. Your first question is whether we agree with the apparent belief of the state agencies and liquor licensees involved in the wine-judging competition that K.S.A. 41-719(c)(5) allowed the event and that K.A.R. 14-11-15 was not applicable or did not prohibit the event.
K.S.A. 2004 Supp. 41-719 prohibits public consumption of alcoholic liquor, then lists numerous exceptions to that general rule. Among the listed exceptions is the consumption of alcoholic liquor on "the state fairgrounds, if such liquor is . . . wine . . . and is consumed only for purposes of judging competitions."[1]
K.A.R. 14-11-15 applies to farm winery licensees. It prohibits public display of domestic table wine "in any place or at any location other than the licensed premises," but then it provides that "[l]icensed farm wineries may, if approved by the director upon receipt of a written request, display domestic table wines at state or county fairs or other agricultural shows if no free samples are dispensed, no retail sales are made at the fair or show, and no orders are taken for subsequent sales." The statute K.A.R. 14-11-15 indicates as authorizing the regulation is K.S.A. 41-714, which establishes numerous restrictions in the advertising and display of liquor. K.S.A. 41-714 does not specifically address the rights of farm winery licensees, or the advertising, display, consumption or judging of alcoholic liquor on the state fairgrounds.
It is well-settled that "[w]hen there is a conflict between a statute dealing generally with a subject and another statute dealing specifically with a certain phase of it, the specific statute controls unless it appears that the legislature intended to make the general act controlling."[2] In the situation at hand, if a conflict exists, K.S.A. 2004 Supp. 41-719(c)(5) trumps K.A.R. 14-11-15 and the statute authorizing it, K.S.A. 41-714, because K.S.A. 2004 Supp. 41-719(c)(5) specifically addresses the topic of wine-judging competitions on the state fairgrounds. Accordingly, based on the information we have been provided, we believe K.S.A. 2004 Supp. 41-719(c)(5) authorizes the type of competition held, notwithstanding the language of K.A.R. 14-11-15.
The manner in which the competition was organized is crucial to this conclusion. According to information you provided and that we confirmed from input by the various state agencies involved, the wine-judging competition at issue was sponsored by the Kansas Departments of Agriculture and Commerce. While some farm winery licensees were present at the wine-judging competition, they were not directly responsible for displaying their wines or conducting the competition. Had the licensees themselves independently displayed their products or dispensed samples thereof on the state fairgrounds, they would have violated K.A.R. 14-11-15. However, because K.A.R. 14-11-15 applies only to farm winery licensees, it did not prevent the state agencies from holding the wine-judging competition.
Your next set of questions deals with the Alcoholic Beverage Control (ABC) Division's responsibilities in approving the wine-judging competition. Specifically, you query:
 "Did the ABC have an obligation to investigate whether the proposed 'judging' at the State Fair compared favorably to other State Fair judging events to determine whether the activity met the statutory requirements for a legitimate 'competitive judging' event? If an investigation was conducted, what other State Fair judging event — if any — uses unscreened, unlimited public volunteers as judges? What other shared elements existed? Do the participating liquor licensees participate in other competitive judging events? Do any of those events — especially outside Kansas — use unscreened public volunteers as judges? What prizes were awarded and what publicity was given by the State Fair to participants for winning the competition? Was it similar to the publicity for other winners of competitions?"
We can address only the question of law regarding ABC's obligation to investigate whether the proposed wine-judging competition compared favorably to other State Fair judging events. Our review of the liquor laws discloses no provision imposing such an obligation on the ABC or its director. Rather, the ABC director is vested with "broad discretionary powers to govern the traffic in alcoholic liquors and to enforce strictly all the provisions of [the liquor control] act in the interest of sanitation, purity of products, truthful representation and honest dealings in such manner as generally will promote the public health and welfare,"[3] and nothing dictates how the director carries out that role with regard to wine-judging competitions on the state fairgrounds.
You also inquire whether the on-site involvement of several state agencies — namely the ABC Director — shielded either the relevant licensees or the state employees involved from investigation of wrongdoing under the Liquor Control Act. According to information we received from the Kansas Departments of Agriculture and Commerce, as well as from the ABC Division, the ABC Director's only on-site involvement in the event was his participation in a grape-stomping contest held in conjunction with the wine-judging competition. In answer to your question, however, there is no provision of law that grants "immunity" from investigation or criminal prosecution of alleged violations of the law merely because state agencies or employees are involved in the event at which those alleged violations occurred. Practically speaking, though, in the event at issue, prior approval of the competition by the ABC Director — who is appointed to "regulate all phases of the . . . manufacture, distribution, sale, possession, transportation and traffic in alcoholic liquor"[4] — effectively would preclude investigation or prosecution of those involved by the ABC.
Finally, you ask:
 "Are state agencies prohibited — by statute, regulation, executive order or other controlling authority — from promoting consumption of certain consumer products when the legislature appropriates tax dollars for activities designed to curtail consumption of those same products in addition to appropriating funds for medical treatment when consumption or over-consumption results in illness or harm?"
We assume the consumer product to which your question refers is alcoholic liquor, the definition of which includes wine.[5] The short answer to your question is no. There is no generic legal authority to preclude state agencies from promoting consumption of wine, as long as the promotion does not violate some other provision of the law, such as giving the product to a person already incapacitated by the consumption of liquor,[6] or furnishing it to a minor.[7]
In fact, there is statutory authority to promote the wine industry in Kansas. "The secretary of agriculture may establish a grape growing and wine making advisory program to aid in the technology, promotion and marketing of Kansas grape growing and Kansas farm wineries."[8] In addition, the Legislature has "established within the Kansas department of agriculture a grape and wine industry advisory council,"[9] and it has given the council the power and authority to "determine and recommend specific marketing program priorities to assist in promoting and marketing the state's grape and wine industry."[10] Finally, there exists within the Kansas Department of Commerce an "agriculture products development division to perform acts and to do, or cause to be done, those things which are designed to lead to the more advantageous marketing of agricultural products of Kansas."[11]
In summary, based on the information we were provided, we believe the type of wine-judging competition organized by the Kansas Departments of Agriculture and Commerce at the Kansas State Fair on September 10, 2004, is authorized by K.S.A. 2004 Supp. 719(c)(5), notwithstanding the provision in K.A.R. 14-11-15 prohibiting farm wineries from displaying their products off their licensed premises and dispensing free samples. Furthermore, there is no legal authority prohibiting promotion of wine in Kansas — as long as no other specific provisions of the liquor laws are violated — and in fact, there are statutes charging the Kansas Departments of Agriculture and Commerce with marketing and promoting Kansas wines.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Laura M. Graham Assistant Attorney General
PK:JLM:LMG:jm
[1] K.S.A. 2004 Supp. 41-719(c)(5).
[2] State v. Layton, 276 Kan. 777, 779 (2003).
[3] K.S.A. 41-210(b).
[4] K.S.A. 41-208.
[5] K.S.A. 41-102(b).
[6] K.S.A. 41-715(a).
[7] K.S.A 41-3610(b).
[8] K.S.A. 74-551.
[9] K.S.A. 2004 Supp. 74-552.
[10] K.S.A. 2004 Supp. 74-553(d).
[11] K.S.A. 2004 Supp. 74-50,156(d)(1).